Michael TISIUS, Appellant,

v.

STATE of Missouri, Respondent.

No. SC 95303

Supreme Court of Missouri,
en banc.

Opinion issued April 25, 2017

Rehearing Denied June 27, 2017

414

William J. Swift, public defender's office, Columbia, for Appellant.

Richard A. Starnes, attorney general's office, Jefferson City, for Respondent.

Patricia Breckenridge, chief justice

Michael Tisius appeals the judgment overruling his Rule 29.15 motion for post-conviction relief from his sentences of death for two counts of murder in the first degree. On appeal, Mr. Tisius asserts that the motion court clearly erred in overruling his claims that he received ineffective assistance of trial counsel during the retrial of his penalty phase and ineffective assistance of appellate counsel on direct appeal. This Court affirms the motion court's judgment.

**Factual and Procedural Background**

In 2000, Mr. Tisius was charged with two counts of murder in the first degree, section 565.020.[1] The charges arose after Mr. Tisius shot and killed two deputies, Leon Egley and Jason Acton, at the Randolph County jail. Mr. Tisius shot the dep-

---

1. All statutory citations are to RSMo 2000 unless otherwise noted.

uties in an attempt to help his former cellmate, Roy Vance, escape from the jail. A jury convicted Mr. Tisius of both counts and sentenced him to death. His convictions were affirmed on direct appeal. *State v. Tisius*, 92 S.W.3d 751 (Mo. banc 2002).

The motion court subsequently granted Mr. Tisius post-conviction relief, and the case was remanded for a new penalty phase. *Tisius v. State*, 183 S.W.3d 207 (Mo. banc 2006). Prior to the new penalty phase, the public defender's office entered into an arrangement with attorneys Chris Slusher and Scott McBride to represent Mr. Tisius for a flat fee of $10,000 each.

In 2010, the retrial of Mr. Tisius' penalty phase began. The state introduced several pieces of aggravation evidence regarding Mr. Tisius' conduct while awaiting trial. This evidence included testimony from a Chariton County deputy that, on July 2, 2000, Mr. Tisius made hand gestures at her mimicking the shooting of a gun. The state also introduced testimony from a Boone County jail guard that, in April 2001, Mr. Tisius asked her if she knew who he was. When the jail guard stated she did not, Mr. Tisius stated he was the one who killed the two jail guards in Randolph County. The state further introduced evidence that, in 2006, a boot shank was found hidden in a radio in Mr. Tisius' cell. Mr. Tisius subsequently entered an *Alford*[2] plea to possession of a prohibited article in the department of corrections, section 217.360.1(4).

Following the state's evidence, several character witnesses testified on behalf of Mr. Tisius, including his mother, Patricia Lambert, and his brother, Joseph Mertens. Their testimony reflected that Mr. Tisius had little interaction with his father as a child. Ms. Lambert further testified that Mr. Tisius had attempted or threat-

ened to attempt suicide several times and that she could not prevent Mr. Mertens from beating up Mr. Tisius on a regular basis. Mr. Mertens testified he would severely beat Mr. Tisius, who was smaller than him and would not fight back.

Psychologist Dr. Shirley Taylor also testified on Mr. Tisius' behalf. Dr. Taylor evaluated Mr. Tisius on two separate occasions and opined that he suffered from depression, anxiety, and post-traumatic stress disorder. She further testified that Mr. Tisius was neglected as a child and described Mr. Tisius' relationship with his father as one of sporadic involvement and broken promises. Dr. Taylor also opined that the shootings were contrary to Mr. Tisius' passive, non-aggressive nature and that Mr. Tisius was remorseful for his actions. On cross-examination, Dr. Taylor was asked about the incidents in the Boone and Chariton county jails. Dr. Taylor stated she was unaware of the incidents and could not comment about them without more context.

Trial counsel chose to present Dr. Taylor's live testimony at the retrial of the penalty phase over two psychiatrists, Dr. Stephen Peterson and Dr. A.E. Daniels, who had previously testified on Mr. Tisius' behalf. Instead, trial counsel entered into a stipulation with the state as to the portions of Dr. Peterson's and Dr. Daniel's prior testimony that could be read into evidence at the retrial.

At the close of evidence, the state submitted three statutory aggravating circumstances with respect to each murder count: (1) that the murder was committed while Mr. Tisius was engaged in the commission of another unlawful homicide; (2) that the murder involved depravity of the mind; and (3) that the murder was committed against a peace officer engaged in official

---

**2.** *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

duties. Trial counsel objected on double jeopardy grounds to the third aggravating circumstance being submitted with respect to the murder of Mr. Acton because the jury from the original penalty phase did not find that circumstance. Trial counsel's objection was overruled. The jury found all three aggravating circumstances with respect to the murder of Mr. Egley and only the first and the third aggravating circumstances with respect to the murder of Mr. Acton. The jury found no mitigating circumstances and recommended Mr. Tisius be sentenced to death on each count. The trial court sentenced Mr. Tisius in accordance with the jury's recommendation. Mr. Tisius' death sentences were affirmed on direct appeal. *State v. Tisius*, 362 S.W.3d 398 (Mo. banc 2012).

Mr. Tisius subsequently filed his Rule 29.15 motion for post-conviction relief. In his amended motion, Mr. Tisius alleged multiple claims of ineffective assistance of trial and appellate counsel. Following an evidentiary hearing, the motion court overruled Mr. Tisius' motion for post-conviction relief. Mr. Tisius appeals. Because this case involves the imposition of the death penalty, this Court has exclusive jurisdiction over the appeal. Mo. Const. art. V, sec. 3.

## Standard of Review

This Court's review of the overruling of a motion for post-conviction relief is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k). A motion court's findings and conclusions are clearly erroneous "if, after reviewing the entire record, this Court is left with the definite and firm impression that a mistake has been made." *Barton v. State*, 486 S.W.3d 332, 336 (Mo. banc 2016) (internal quotation omitted).

A movant is entitled to post-conviction relief for ineffective assistance of counsel upon establishing: (1) trial counsel "failed to exercise the level of skill and diligence that a reasonably competent counsel would in a similar situation, and (2) he or she was prejudiced by that failure." *McIntosh v. State*, 413 S.W.3d 320, 324 (Mo. banc 2013) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Both prongs of the *Strickland* test "must be shown by a preponderance of the evidence in order to prove ineffective assistance of counsel." *Strong v. State*, 263 S.W.3d 636, 642 (Mo. banc 2008).

To satisfy the *Strickland* performance prong, a movant "must overcome the strong presumption that counsel's conduct was reasonable and effective." *Hoeber v. State*, 488 S.W.3d 648, 655 (Mo. banc 2016) (internal quotation omitted). This presumption is overcome if the movant identifies "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." *McIntosh*, 413 S.W.3d at 324 (internal quotation omitted).

To establish *Strickland* prejudice, a movant must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (internal quotation omitted). "A reasonable probability exists when there is a probability sufficient to undermine confidence in the outcome." *McLaughlin v. State*, 378 S.W.3d 328, 337 (Mo. banc 2012) (internal quotation omitted). "Regarding a sentence to death, a defendant must show with reasonable probability that the jury, balancing all the circumstances, would not have awarded the death penalty." *Strong*, 263 S.W.3d at 642.

## Failure to Rebut the Boot Shank Aggravation Evidence

In his first point, Mr. Tisius asserts the motion court erred in overruling his motion for post-conviction relief because trial counsel were ineffective for failing to rebut the state's aggravation evidence regarding his conviction for possessing a boot shank. In 2006, while awaiting the retrial of his penalty phase, a boot shank was found hidden in a radio in Mr. Tisius' cell. Mr. Tisius subsequently entered an *Alford* plea to one count of possession of a prohibited article in the department of corrections. At the plea hearing, Mr. Tisius acknowledged he knew the boot shank was in his cell but claimed another inmate had put it in the radio and threatened Mr. Tisius that he better leave it there. The trial court accepted Mr. Tisius' *Alford* plea and sentenced him to a concurrent five-year term of imprisonment.

During the retrial of Mr. Tisius' penalty phase, the state referenced his *Alford* plea to possession of the boot shank in opening and closing argument. The state also read into evidence the docket entry regarding Mr. Tisius' *Alford* plea and a portion of the complaint charging Mr. Tisius with possession of the boot shank. The state did not read the portion of the complaint stating the boot shank was an instrument that may be used in such manner as to endanger the safety or security of the correctional center.

In his motion for post-conviction relief, Mr. Tisius alleged trial counsel were ineffective for failing to further investigate and rebut the aggravation evidence. Mr. Tisius alleged that further investigation would have led to the discovery that the boot shank was not sharpened and that he possessed the boot shank because another inmate put it in his cell. Mr. Tisius also alleged reasonable trial counsel would have explained to the jury what an *Alford* plea

is and read the plea hearing transcript so the jury could hear the real reason he possessed the boot shank.

The motion court concluded trial counsel were not ineffective because additional evidence regarding the boot shank would have been a double-edged sword. The motion court reasoned that reading the plea transcript would have put Mr. Tisius' version of events before the jury, but it also would have presented information favorable to the state. The motion court further reasoned it was not unreasonable for trial counsel to avoid giving additional details about the offense because it could have led to the jury placing more significance on the conviction. The motion court also concluded that some of the rebuttal evidence would have been inadmissible hearsay.

 Typically, witnesses may testify only "to those matters of which the witness has personal first-hand knowledge." *State v. Taylor*, 466 S.W.3d 521, 529 (Mo. banc 2015). The rebuttal witnesses Mr. Tisius offered had no personal knowledge regarding the placement of the boot shank in his cell. Timothy O'Hara, an inmate, testified it was his understanding that Charles Hurt, another inmate, had put the boot shank in Mr. Tisius' radio. Mr. O'Hara also testified that Mr. Hurt was in prison with Mr. Tisius at the time the boot shank was found and that Mr. Hurt had a reputation for killing a former cellmate and setting people up in prison. Mr. O'Hara admitted to having no personal knowledge about the boot shank in Mr. Tisius' cell. Mitigation specialist Tami Miller testified that Mr. Tisius told her another inmate threatened him if he did not hide the boot shank for him. Mr. Slusher testified that Mr. Tisius wrote a letter to the department of corrections stating the boot shank was in his radio because Mr. Hurt put it there and threatened Mr. Tisius to keep it.

█ It follows that the rebuttal testimony offered was not based on the witnesses' own personal knowledge but, instead, on statements made following the incident. Out-of-court statements offered for the truth of the matter asserted constitute hearsay and are inadmissible unless they fall under a recognized exception. *Id.* at 530. Trial counsel will not be found ineffective for failing to present inadmissible evidence. *McLaughlin*, 378 S.W.3d at 346. Because the rebuttal testimony was based on out-of-court statements, it constitutes hearsay and would have been inadmissible at trial.[3] Trial counsel, therefore, cannot be deemed ineffective for failing to present such evidence.

█ The remaining rebuttal evidence that Mr. Tisius alleges trial counsel should have presented consists of the plea transcript and photographs of the boot shank. Mr. Tisius asserts he was prejudiced by trial counsel's failure to rebut the state's evidence with the plea transcript and the boot shank photographs because the jury was left with the impression that he was a risk to correctional staff and other inmates.

While the plea transcript would have presented Mr. Tisius' version of why he possessed the boot shank, it also would have revealed information favorable to the state. The factual basis for the plea described the boot shank as "a long, narrow piece of metal that is sharpened at one end"[4] and as a type of weapon that obviously "could be used to endanger the security or safety of another inmate or staff at the correctional center." Although Mr. Tisius was charged pursuant to section 217.360.1(4), which requires evidence that the article possessed could endanger the safety or security of the correctional center, that portion of the charge had not been read to the jury. Accordingly, reading the plea transcript to the jury would have emphasized the dangerous nature of the offense to the jury.

Moreover, although the photographs show the boot shank had not been modified or sharpened, they, nevertheless, depict a long piece of rough-looking metal

---

3. Relying on *Green v. Georgia*, 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979), Mr. Tisius asserts the hearsay rules cannot be rigidly applied to exclude relevant, reliable mitigation evidence. In *Green*, however, the defendant sought to introduce hearsay evidence that his co-defendant had admitted to a close friend that the co-defendant shot the victim while the defendant was not present. *Id.* at 97, 99 S.Ct. 2150. In finding that such evidence was admissible, the Supreme Court of the United States explained: "The excluded testimony was highly relevant to a critical issue in the punishment phase of trial, and substantial reasons existed to assume its reliability." *Id.* (internal citation omitted). The Supreme Court emphasized that the co-defendant's statement was spontaneously made to a close friend, there was ample evidence to corroborate the confession, and the state had used such testimony in the co-defendant's trial to obtain a conviction. *Id.* The Supreme Court concluded that, under "these unique circumstances, 'the hearsay rule may not be applied mechanistically to defeat the ends of justice.' " *Id.* (quoting *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)). *Chambers* involved similar circumstances in which the defendant sought to introduce a confession of another individual, and the Supreme Court found that, under the facts and circumstances of the case, the evidence should have been admitted because the confession bore the assurances of trustworthiness. Much like *Green*, *Chambers* was narrowly tailored to a situation involving a confession to the charged crime by another individual with sufficient indicia of reliability. The evidence Mr. Tisius alleges trial counsel should have introduced does not include a confession bearing such indicia of trustworthiness and reliability.

4. While the photographs show the boot shank was not sharpened, Mr. Tisius stated at the plea hearing that he understood that is what the state's evidence would be.

with sharp corners. Mr. Tisius can only speculate as to how the jury would have perceived the boot shank photographs. It follows that the plea transcript and the photographs would not have rebutted the impression that Mr. Tisius was a risk to correctional staff or other inmates sufficient to create a reasonable probability that the jury would not have imposed the death penalty had such evidence been presented. Accordingly, the motion court did not clearly err in concluding that trial counsel were not ineffective for failing to further investigate or rebut the boot shank evidence.[5]

### Failure to Rebut the Testimony Regarding the Boone County Jail Incident

In his second point, Mr. Tisius asserts trial counsel were ineffective for failing to rebut aggravation evidence that he bragged to a Boone County jail guard about killing Mr. Egley and Mr. Acton. During the retrial of the penalty phase, Jacqueline Petri, who worked at the Boone County jail, testified that, in April 2001, she was clearing the inmates' food trays when Mr. Tisius began speaking with her about transferring to another facility. She informed Mr. Tisius that he would need to fill out a form and that she would pass it along. She testified that Mr. Tisius then asked her, "Don't you know who I am?" When she told him she did not, he told her he was the one who killed the two jailers in Randolph County. On cross-examination, Ms. Petri agreed that Mr. Tisius was anxious to be moved and that, following Mr. Tisius' comment, things were "business as usual." In closing arguments, the state argued Mr. Tisius was a future danger to correctional staff and other inmates as evidenced by his bragging about the murders to Ms. Petri.

In his motion for post-conviction relief, Mr. Tisius alleged reasonable trial counsel would have rebutted such evidence with testimony from Dr. Peterson that Mr. Tisius' statements to Ms. Petri were nothing more than adolescent-type behavior and had no bearing on the future danger he posed to correctional staff. At the evidentiary hearing, Dr. Peterson testified that Mr. Tisius' statements to Ms. Petri were open to interpretation. He stated one could say maybe Mr. Tisius was bragging, but one could also say maybe he was frightened and trying to tell Ms. Petri why it was important for him to be transferred. The motion court concluded there was no reasonable probability that any additional evidence about the Boone County jail incident would have altered the result of the trial because none of the rebuttal evidence conclusively refuted the evidence presented during the penalty phase retrial.

Mr. Tisius asserts he was prejudiced by trial counsel's failure to rebut Ms. Petri's testimony and offer an alternative explanation for the Boone County jail incident because the state used the incident in its closing to argue Mr. Tisius was bragging about the murders. The rebuttal testimony from Dr. Peterson, however, does not establish a reasonable probability of a different outcome. Dr. Peterson testified that Mr. Tisius' statements to Ms. Petri were open to interpretation—one could interpret the comments as bragging while others could interpret them as Mr. Tisius

---

5. Although Mr. Tisius asserts reasonable trial counsel would have explained the significance of an *Alford* plea to the jury, he fails to explain how he was prejudiced by trial counsel's failure to do so. Moreover, as the motion court found, explaining the concept of an *Alford* plea to the jury would not have necessarily benefited Mr. Tisius in that remorse for his conduct was at issue and the jury could have viewed the *Alford* plea as a failure to accept responsibility for his actions.

expressing his fear and need to be transferred to another facility. Given the inconclusive nature of Dr. Peterson's testimony, it would not have rebutted Ms. Petri's testimony sufficient to create a reasonable probability that the jury would not have imposed the death penalty. The motion court, therefore, did not clearly err in finding that trial counsel were not ineffective for failing to rebut Ms. Petri's testimony.

### Failure to Investigate and Rebut the Chariton County Jail Incident

In his third point, Mr. Tisius asserts trial counsel were ineffective for failing to investigate and rebut the aggravation evidence that he made hand gestures to a deputy at the Chariton County jail mimicking the firing of a gun. During the penalty phase retrial, Deputy Donna Harmon testified that, shortly after midnight, she saw Mr. Tisius in his cell with his hands raised as if he were holding a pistol and making motions with his mouth as if he were shooting at her. On cross-examination, Deputy Harmon admitted that the cell doors are mostly solid and that inmates communicate with one another through the bullet-proof glass. Deputy Harmon further admitted that the jail's lighting affects how things in the cells can be seen and that she initially incorrectly reported that she had heard Mr. Tisius making gun sounds during the incident.

In his motion for post-conviction relief, Mr. Tisius alleged trial counsel were ineffective for failing to further investigate the Chariton County jail incident and rebut Deputy Harmon's testimony with photographs depicting the lighting conditions at the jail. At the evidentiary hearing, Mr. McBride testified he did not believe lingering over the Chariton County jail incident and making a "mini trial" out of the event would advance Mr. Tisius' case. Photographs taken at the Chariton County jail

were introduced at the evidentiary hearing as well as testimony from both a state investigator and an investigator from the public defender's office about the jail's lighting conditions.

The motion court concluded that, even if trial counsel had done more to investigate this incident, the additional evidence would not have altered the result of the penalty phase. The motion court reasoned none of the evidence presented at the post-conviction relief hearing conclusively refutes the evidence at trial and, compared to the seriousness of the murders, the probable outcome of the penalty phase would have been the same.

Mr. Tisius asserts reasonable counsel would have investigated and rebutted Deputy Harmon's testimony by introducing photographs that would have demonstrated that the lighting in the jail made it impossible for Deputy Harmon to see anything or, if she could see anything, it was readily subject to misinterpretation due to the poor lighting. The failure to investigate and call available and useful rebuttal witnesses to aggravating evidence can constitute ineffective assistance of counsel. *Ervin v. State*, 80 S.W.3d 817, 827 (Mo. banc 2002). "One of the primary duties of counsel at a capital sentencing proceeding is to neutralize the aggravating circumstances advanced by the state and present mitigating evidence." *Id.* Nevertheless, to establish ineffective assistance for failure to investigate, a movant must demonstrate that he or she "was prejudiced as a result of counsel's unreasonable failure to investigate." *Barton v. State*, 432 S.W.3d 741, 759 (Mo. 2014).

Mr. Tisius asserts trial counsel's failure to investigate and rebut Deputy Harmon's testimony was highly prejudicial because the state used the incident in its closing to argue he was unremorseful. In support of his assertion, Mr. Tisius emphasizes the

photographs taken at the Chariton County jail and the testimony from the public defender's investigator that nothing could be seen inside the jail cell when the lights were off.

 But Mr. Tisius ignores the state investigator's testimony that he could see the individual in the cell under all lighting conditions and that the photographs were darker than what could be seen in person. Rebutting Deputy Harmon's testimony with the photographs, therefore, would have resulted only in conflicting testimony about the lighting conditions and drawn more attention to the matter. As Mr. McBride testified at the evidentiary hearing, his strategy was to avoid making a "mini-trial" out of the incident. Instead, he chose to cross-examine Deputy Harmon about the incident, and she admitted that the jail's lighting affects the way things are seen and that prisoners often communicate with each other through the glass. Trial counsel will not be deemed ineffective for pursuing one reasonable trial strategy over another. *Id.* at 749. Accordingly, trial counsel's investigation and handling of the Chariton County jail aggravation evidence did not amount to ineffective assistance of counsel.

### Failure to Properly Prepare an Expert Witness

 In his fourth point, Mr. Tisius asserts trial counsel were ineffective for failing to prepare Dr. Taylor by not informing her of the incidents in the Boone County and Chariton County jails. Mr. Tisius contends that, because Dr. Taylor was not informed of those incidents, her opinions were subject to attack as being based on incomplete information. This differs, however, from the argument raised in his amended motion for post-conviction relief.

 In his amended motion, Mr. Tisius alleged that, if Dr. Taylor had been

informed of the incidents in the jails, "she could have mitigated the State's aggravating evidence by explaining how [Mr. Tisius'] background and mental health affected his behavior in those situations." The motion court concluded Mr. Tisius abandoned this claim because Dr. Taylor did not testify at the evidentiary hearing; therefore, he presented no evidence as to how additional preparation would have changed her testimony. To avoid the absence of Dr. Taylor's testimony at the evidentiary hearing, Mr. Tisius now claims that the failure to prepare Dr. Taylor permitted her to be impeached by the state. But defects in post-conviction relief pleadings "cannot be remedied by the presentation of evidence and refinement of a claim on appeal." *Mallow v. State*, 439 S.W.3d 764, 769 (Mo. banc 2014) (internal quotation omitted). Claims not raised in a motion for post-conviction relief are deemed waived and cannot be reviewed on appeal. *Id.* Accordingly, this Court cannot review the claim Mr. Tisius now raises on appeal.

### Failure to Include an Issue in the Motion for New Trial

 In his fifth point, Mr. Tisius asserts trial counsel were ineffective for failing to include a claim in his motion for new trial that the trial court erred in overruling an objection he made when the prosecutor asked Dr. Taylor whether Mr. Tisius had pleaded guilty to the offenses. Mr. Tisius asserts that, had the issue been included in the motion for new trial, it would not have been subject to plain error review on appeal.

 But the failure to preserve an issue for direct appeal is not a cognizable post-conviction relief claim. *Dickerson v. State*, 269 S.W.3d 889, 893 n.3 (Mo. banc 2008). A cognizable post-conviction relief claim requires a movant to "allege that the

trial counsel's failure denied him a fair trial." *McLaughlin*, 378 S.W.3d at 355. Because Mr. Tisius alleges only that the failure to include the issue in the motion for new trial caused it to be reviewed for plain error on appeal, he is not asserting trial counsel's alleged failure denied him a fair trial. Consequently, Mr. Tisius' claim that trial counsel were ineffective for failing to include the issue in his motion for new trial is not cognizable.

Moreover, even if trial counsel had included the issue in Mr. Tisius' motion for new trial, it would not have been meritorious. During her direct testimony, Dr. Taylor testified that she believed Mr. Tisius was sorrowful for his actions, that he wanted to apologize to the families, and that he was remorseful. On cross-examination, the state questioned Dr. Taylor about Mr. Tisius' motivation to lie to her to avoid the death penalty. Dr. Taylor answered that Mr. Tisius did not have a motivation to lie because "[h]e knew he was guilty of the murder." The state then questioned the extent of Mr. Tisius' remorse, stating: "But did he plead guilty? No. Right? He didn't plead guilty." Trial counsel then objected.

On direct appeal, this Court reasoned:

When a party inquires into part of an act, occurrence, or transaction they have "opened the door" to testimony regarding that act, occurrence, or transaction, and the opposing party is entitled to inquire into other parts of it in order to rebut possible inferences that may be drawn from an incomplete version presented by the adversary or to prove the party's own version of events. Here, [Mr.] Tisius sought testimony from Dr. Taylor demonstrating his remorse and sorrow for murdering two peace officers. The State's cross-examination of Dr. Taylor was an attempt to discredit the

veracity of [Mr.] Tisius' feelings as he related them to Dr. Taylor.

*Tisius*, 362 S.W.3d at 409 (internal quotation and citation omitted). Although Mr. Tisius attributes this Court's reasoning to plain error review, this Court clearly found that the state's cross-examination was not improper. Therefore, trial counsel were not ineffective for failing to include the issue in Mr. Tisius' motion for new trial.

### Failure to Submit Portions of Dr. Peterson's Testimony

In his sixth point, Mr. Tisius asserts that trial counsel were ineffective for submitting only select portions from Dr. Peterson's prior testimony. During the penalty phase retrial, trial counsel did not call Dr. Peterson to testify; instead, portions of Dr. Peterson's prior testimony from Mr. Tisius' first post-conviction relief proceedings were read to the jury. The only mental health expert trial counsel had testify at the retrial was Dr. Taylor.

"The selection of witnesses and evidence are matters of trial strategy, virtually unchallengeable in an ineffective assistance claim." *Johnson v. State*, 388 S.W.3d 159, 165 (Mo. banc 2012) (internal quotation omitted). At the post-conviction relief proceedings, Mr. McBride testified that the defense had opinions from three different mental health experts but decided to present live testimony only from Dr. Taylor. He further testified that the individual passages chosen from Dr. Peterson's previous testimony were based on what he and Mr. Slusher believed to be the best evidence to include at trial. Mr. Slusher testified he strategically chose not to read portions of Dr. Peterson's prior testimony because he believed Dr. Peterson's opinion would have been difficult to support in front of the jury based on the facts of the case. He further testified he had read through Dr. Peterson's testimony and

believed it was something you might be able to sell to a judge in a post-conviction relief proceeding but not to a jury. The record, therefore, supports a finding that trial counsel's decisions with respect to Dr. Peterson's prior testimony were trial strategy.

Mr. Tisius asserts trial counsel's selection of Dr. Peterson's testimony was unreasonable trial strategy because omitted portions of Dr. Peterson's prior testimony would have supported submission of other statutory mitigating circumstances to the jury. In particular, he relies on an omitted portion of testimony in which Dr. Peterson opined that Mr. Tisius was operating at a diminished capacity or acting under the influence of extreme mental or emotional disturbance at the time of the offense because Mr. Tisius had not been treated for his major depression, post-traumatic stress disorder, dysthymia, or his passive dependence on others. Mr. Tisius asserts he was prejudiced by trial counsel's failure to present this portion of Dr. Peterson's testimony because, had the jury been instructed about the statutory mitigating circumstances of diminished capacity and acting under the influence of extreme mental or emotional disturbance, there is a reasonable probability he would not have been sentenced to death.

The motion court concluded that, even if the additional excerpts of Dr. Peterson's prior testimony had been presented to the jury, there was not a reasonable probability of a different outcome. Much of the testimony that Mr. Tisius argues should have been presented related to his mental health issues and his relationship with Mr. Vance.[6] As the motion court reasoned, that

information was also presented to the jury through other witnesses, such as Dr. Taylor and Dr. Daniels, or through other excerpts of Dr. Peterson's testimony that were read into evidence. It follows that trial counsel had presented a clear view of Mr. Tisius' mental health issues to the jury without the additional excerpts of Dr. Peterson's testimony. Accordingly, Mr. Tisius has not established that a reasonable probability exists that the result of the penalty phase would have been any different had the additional portions of Dr. Peterson's prior testimony been presented to the jury.

### Failure to Call Mitigating Witnesses

In his seventh point, Mr. Tisius asserts trial counsel were ineffective for failing to call several mitigating witnesses to testify on his behalf. Ordinarily, the failure to call a witness will not support an ineffective assistance of counsel claim because the choice of witnesses is presumptively a matter of trial strategy. *Davis v. State*, 486 S.W.3d 898, 909–10 (Mo. banc 2016). "If a potential witness's testimony would not unqualifiedly support a defendant, the failure to call such a witness does not constitute ineffective assistance." *Worthington v. State*, 166 S.W.3d 566, 577 (Mo. banc 2005) (internal quotation omitted). Counsel will not be deemed ineffective for failing to present cumulative evidence. *Deck v. State*, 381 S.W.3d 339, 351 (Mo. banc 2012).

First, Mr. Tisius asserts reasonable trial counsel would have called his father, Charles Tisius, and his stepmother, Leslie Ann Tisius, to testify because their testimony would have established the ex-

---

6. The importance of Mr. Tisius' susceptibility to Mr. Vance's influence is limited with respect to the penalty phase as there was no evidence that Mr. Vance influenced Mr. Tisius to shoot the deputies. Rather, the record re-flects that, under Mr. Vance's plan, Mr. Tisius was to use the gun only to get the deputy they believed most likely to comply to open Mr. Vance's cell.

tent of the adversity he endured living with his mother and showed he had no stable living environment. The motion court concluded trial counsel were not ineffective for failing to call Mr. Tisius' father or stepmother because, even though the testimony presented a different reason for the strained relationship between Mr. Tisius and his father, it also placed Mr. Tisius in a more negative light.

Because the testimony from Mr. Tisius' father and stepmother would not have unqualifiedly supported the theory put forward by the defense during the penalty phase retrial, trial counsel's failure to call them to testify was not unreasonable trial strategy. At the post-conviction relief hearing, Mr. Tisius' father and stepmother both testified that Mr. Tisius' mother failed to make him available for visitation or, when she did, Mr. Tisius was in ragged clothing and smelled of urine. Mr. Tisius' father further testified he tried to stay in contact with Mr. Tisius but got no response from him or his mother. But additional testimony from Mr. Tisius' father and stepmother revealed Mr. Tisius refused to follow the rules while at his father's house and got into trouble at school.

Mr. McBride testified that the defense's theory during the penalty phase was that Mr. Tisius should not be sentenced to death because he was overborne by the will of Mr. Vance, who had become a father figure to him. Multiple witnesses testified during the penalty phase retrial that Mr. Tisius lacked a father figure growing up due to his father's lack of involvement. While the testimony from Mr. Tisius' father and stepmother presents an alternative explanation for the lack of involvement, it also placed some of the blame on Mr. Tisius by portraying him as uncooperative and a troublemaker. Because the testimony from Mr. Tisius' father and stepmother had the potential to present Mr.

Tisius in a negative light, their testimony did not wholly support the defense's theory at trial. Trial counsel, therefore, were not ineffective for failing to call them as witnesses.

■ Mr. Tisius further asserts trial counsel were ineffective for not calling several of his childhood friends and a former teacher to testify during the penalty phase retrial. The motion court concluded that trial counsel were not ineffective for failing to call these witnesses because their testimony did not present any significantly new information.

As the motion court reasoned, the majority of the testimony offered by Mr. Tisius' childhood friends dealt with his contentious relationship with his brother, Joey Mertens. Such testimony is cumulative to testimony from Mr. Mertens and Mr. Tisius' mother that Mr. Mertens had violently beat up Mr. Tisius on a regular basis. Additionally, Mr. Tisius asserts trial counsel should have called Mr. Tisius' former teacher, Lynn Silverman, to testify about Mr. Tisius being homeless and having suicidal thoughts. Such testimony, however, would have been cumulative to testimony from Mr. Tisius' mother that he had attempted suicide or threatened to attempt suicide as a child and was homeless for a time. Trial counsel, therefore, were not ineffective for failing to present cumulative testimony from Mr. Tisius' childhood friends and former teacher.

### Failure to Object to the State's Closing Arguments

■ In his eighth and ninth points, Mr. Tisius asserts trial counsel were ineffective for failing to object to the state's closing arguments. Typically, trial counsel's "failure to object during closing argument is not error, but rather a function of trial strategy." *Barton*, 432 S.W.3d at 754 (internal quotation omitted). It follows

that, to establish ineffective assistance of counsel, "a movant must prove that the failure to object was not a matter of trial strategy and that the failure to object was prejudicial." *Id.* The failure to make meritless objections does not constitute ineffective assistance of counsel. *Id.*

During closing, the state made the following arguments:

> And, you know, it's pretty audacious to come in here now, as this defendant is doing, and saying, I didn't have a dad and, boy, look what happened. Do those Miller kids [7]—do those Miller kids get to go kill somebody because their dad, their father figure is gone? If so, Mr. Tisius, write down the name. Tell me who they get to kill, because I bet your name would be on that piece of paper.

The state then concluded by stating:

> If the death penalty means anything, if it has any application at all, it can eliminate one thing here. It can stop Michael Tisius from doing this again. And it is an answer to the plea from the families of Leon and Jason and Randolph County that you do justice in this case.

Mr. Tisius contends these arguments implored the jury to impose the death penalty because it was what the victims would have wanted and, therefore, improperly urged the jury to decide punishment based on emotion.

■ This Court recognizes that "[i]t is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be based on reason rather than caprice or emotion." *State v. Storey*, 901 S.W.2d 886, 901 (Mo. banc 1995) (internal quotation omitted). Nevertheless, the prosecutor is permitted to "comment on the evidence

and the credibility of the defendant's case" and "may even belittle and point to the improbability and untruthfulness of specific evidence." *State v. Storey*, 40 S.W.3d 898, 910 (Mo. banc 2001) (internal quotation omitted).

■ When read in context, the state's closing argument regarding the Miller children was not an appeal for the jury to impose the death sentence based on emotion but rather a comment as to the credibility of Mr. Tisius' defense that he was less responsible for his actions because he lacked a father figure. Any objection from trial counsel, therefore, would not have been meritorious. Likewise, although Mr. Tisius frames the state's argument regarding the victim's families as an impassioned plea to the jury's emotions, the prosecutor's statement, when read in context, equated imposition of the death penalty with justice. Because it is not improper for a prosecutor to "seek and request the most severe penalty," *State v. Clayton*, 995 S.W.2d 468, 480 (Mo. banc 1999), any objection would have been nonmeritorious.

■ Mr. Tisius further asserts trial counsel should have objected to the state's closing argument regarding mercy:

> Ladies and gentlemen, you can—and I told you during voir dire a couple days ago, you can extend mercy for whatever reason to this man. You can do that. But the one thing he does not have the right to do is ask for it. He forfeited that right on June 22nd when he committed these two murders.

Mr. Tisius contends the state's argument misstated the law in that it improperly informed the jury it could not grant him mercy.

---

7. At the time of his murder, Mr. Acton was engaged to Lori Miller, who has five children from a previous marriage.

When read in context, the state is not arguing the jury cannot, as a matter of law, extend mercy to Mr. Tisius. In fact, the state expressly argued that the jury "can do that." Instead, the state is arguing that mercy should not be extended to Mr. Tisius because of the murders he committed. "A prosecutor is allowed to argue that the defendant does not deserve mercy under the facts of a particular case." *State v. Rousan*, 961 S.W.2d 831, 851 (Mo. banc 1998). Because the state was allowed to make such arguments, any objection by trial counsel would have been nonmeritorious. Accordingly, trial counsel were not ineffective for failing to object to the state's closing arguments.

### Flat Fee Arrangement

In his tenth point, Mr. Tisius asserts he was denied effective assistance of counsel in that trial counsel's flat fee arrangement created a conflict of interest. Mr. Tisius contends he was adversely affected by the flat fee arrangement because flat fees discourage lawyers from doing more than what is minimally necessary and pit the client's interests against the attorney's interests. He asserts the competing interests were apparent from Mr. Slusher's testimony that he could not afford to have his firm's investigator devote much time to the case.

"To prevail on a claim that a conflict of interest violates a movant's right to counsel, the movant must demonstrate that an actual conflict of interest adversely affected counsel's performance." *Dorsey v. State*, 448 S.W.3d 276, 300 (Mo. banc 2014) (internal quotation omitted). "No Missouri court has found that a flat fee arrangement creates a conflict of interest." *Id.*

The motion court found trial counsel's testimony credible that the flat fee arrangement had no adverse impact on their representation of Mr. Tisius. The record supports the motion court's finding. Mr. McBride testified there was nothing he did differently for the case because he was being paid a flat fee instead of charging an hourly rate. While Mr. Slusher testified the flat fee prevented the investigator from Mr. Slusher's firm from doing much work on the case, he further testified that, to the extent they needed an investigator, it was something they could bill the public defender's office for or that the public defender's office would provide. Additional testimony establishes that, when trial counsel requested a mitigation specialist, the public defender's office provided one for Mr. Tisius' case. The motion court, therefore, did not clearly err in finding that no conflict of interest resulted from trial counsel's flat fee agreement.

### Mr. Tisius' Mental Age

In his eleventh point, Mr. Tisius asserts trial counsel were ineffective for failing to file a pretrial motion to preclude the death penalty on grounds that his mental age was younger than 18 at the time of the alleged offense. In support of his argument, Mr. Tisius relies on testimony from experts at his post-conviction relief hearing that his psychological age was that of an adolescent. The motion court concluded trial counsel were not ineffective because Mr. Tisius' claim that his mental age precluded the imposition of the death penalty lacked merit.

In *Roper v. Simmons*, 543 U.S. 551, 578, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), the Supreme Court of the United States held that the "Eighth and Fourteenth Amendments forbid the imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed." In so holding, the Supreme Court explained juvenile offenders cannot be reliably classified among the worst offenders because they have an underdeveloped

sense of responsibility that leads to impetuous and ill-considered actions and decisions and are more "susceptible to negative influences and outside pressures." *Id.* at 569, 125 S.Ct. 1183.

Mr. Tisius asserts trial counsel should have objected to the imposition of the death penalty because the Supreme Court's reasoning in *Roper* is equally applicable to him in that his mental age was younger than 18 at the time he committed the offense. In *Roper*, the Supreme Court acknowledged that "[t]he qualities that distinguish juveniles from adults do not disappear when an individual turns 18." *Id.* at 574, 125 S.Ct. 1183. Nevertheless, it concluded that "a line must be drawn" and that "18 is the point where society draws the line for many purposes between childhood and adulthood." *Id.* The Supreme Court, therefore, recognized the potential for a defendant's mental age to differ from his or her biological age but, nonetheless, implemented a bright line rule as to the minority age for imposition of the death penalty. It follows that any objection to the imposition of the death penalty based on *Roper* would not have been meritorious in this case.[8] The motion court did not clearly err in finding trial counsel were not ineffective for failing to object on grounds that Mr. Tisius' mental age prohibited imposition of the death penalty.

### Alternative or Modified Penalty Instructions

In his twelfth point, Mr. Tisius asserts that trial counsel was ineffective for failing to offer alternative or modified penalty instructions based on the deficiencies identified by the American Bar Association with capital instructions. This is a different claim than that raised in his amended motion for post-conviction relief. In his amended motion, Mr. Tisius alleged only that the instructions were constitutionally deficient. He did not allege trial counsel were ineffective for failing to request alternative or modified instructions. Claims not raised in a motion for post-conviction relief are deemed waived and cannot be reviewed on appeal. *Mallow*, 439 S.W.3d at 769. "Pleading defects cannot be remedied by the presentation of evidence and refinement of a claim on appeal." *Id.* (internal quotation omitted). Accordingly, Mr. Tisius waived his claim that trial counsel were ineffective for failing to offer alternative or modified penalty instructions.

### Ineffective Assistance of Appellate Counsel

In his final point, Mr. Tisius asserts his appellate counsel was ineffective for failing to raise a double jeopardy claim that the state was collaterally estopped from submitting an aggravating circumstance that the jury in the original penalty phase had not found. "To prevail on a claim of ineffective assistance of appellate counsel, the movant must establish that counsel failed to raise a claim of error that was so obvious that a competent and effective lawyer would have recognized and asserted it." *Id.* at 770 (internal quotation omitted). "There is no duty to raise every possible issue asserted in the motion for new trial on appeal, and no duty to present non-frivolous issues where appellate counsel strategically decides to win-

---

**8.** In *Atkins v. Virginia*, 536 U.S. 304, 321, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), the Supreme Court of the United States held that executing mentally retarded criminals constitutes cruel and unusual punishment and is, therefore, prohibited by the Eighth Amendment. Mr. Tisius does not attempt to meet this standard. Rather, he asserts only that his mental age, which he alleges was younger than 18 at the time of the offense, would have precluded imposition of the death penalty under *Roper*. Mr. Tisius cites no other case or authority that has applied *Roper* because of a defendant's mental age.

now out arguments in favor of other arguments." *Storey v. State*, 175 S.W.3d 116, 148 (Mo. banc 2005) (internal quotation omitted).

In the original penalty phase, the state submitted two aggravating circumstances with respect to the murder of Mr. Acton: (1) that the murder was committed while Mr. Tisius was engaged in the commission of another unlawful homicide and (2) that the murder was committed against a peace officer engaged in his official duties. The jury did not find the first aggravating circumstance. During the retrial, the state sought to again submit the aggravating circumstance that the murder was committed while Mr. Tisius was engaged in the commission of another unlawful homicide. Trial counsel objected on double jeopardy grounds. The trial court overruled the objection, and the jury found that the murder was committed while Mr. Tisius was engaged in the commission of another unlawful homicide. Trial counsel included the objection in Mr. Tisius' motion for new trial.

At the evidentiary hearing, Mr. Tisius' appellate counsel testified she did not raise the issue on direct appeal, despite it being raised in the motion for new trial, because the case law was unfavorable toward such claims and because she was concerned about exceeding the brief's word count restriction. The motion court found that the claim lacked merit; therefore, appellate counsel was not ineffective for failing to raise it.

This Court has held that "the failure to find a particular aggravating circumstance during a sentencing proceeding does not serve as an acquittal of that circumstance." *State v. Simmons*, 955 S.W.2d 752, 759 (Mo. banc 1997) (citing *Poland v. Arizona*, 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986)). Double jeopardy protections do not attach because aggravating circumstances "are not separate penalties or offenses, on which the jury's finding produces a conviction or the jury's failure to find produces an acquittal." *Id.* at 760. "[T]he failure to find a particular aggravating circumstance forms the basis for a judgment of acquittal on the imposition of the death sentence only when there is a complete failure to find that any aggravating circumstance exists to support the death sentence." *Id.*

In the original penalty phase, the jury found at least one aggravating circumstance existed to support the imposition of the death penalty. Therefore, the fact that the jury in the original penalty phase did not find the aggravating circumstance that the murder of Mr. Acton was committed while Mr. Tisius was engaged in the commission of another unlawful homicide did not constitute an acquittal of that circumstance. Because the issue would not have been meritorious if raised on appeal, Mr. Tisius' appellate counsel cannot be deemed ineffective for failing to raise it. Accordingly, the motion court did not clearly err in finding Mr. Tisius was provided effective assistance of appellate counsel.

## Conclusion

The motion court did not clearly err in overruling Mr. Tisius' motion for post-conviction relief because he failed to establish he was provided ineffective assistance of trial or appellate counsel. Accordingly, the motion court's judgment is affirmed.

Fischer, Stith, Draper, Wilson and Russell, JJ., concur.