

# In the Missouri Court of Appeals
## Eastern District

### DIVISION THREE

| | | |
|---|---|---|
| LELAND DENT, | ) | No. ED110430 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | Cause No. 17SL-CC03590 |
| | ) | |
| STATE OF MISSOURI, | ) | Honorable Margaret T. Donnelly |
| | ) | |
| Respondent. | ) | Filed: March 21, 2023 |

### Introduction

A trial jury convicted Leland Dent of assault in the first-degree and armed criminal action. Dent appeals the motion court's judgment denying his amended Rule 29.15 motion for post-conviction relief without an evidentiary hearing.[1] In his two points on appeal, Dent argues the motion court clearly erred in denying his amended motion because trial counsel was ineffective for failing to present medical evidence relevant to his claim of self-defense and failing to object to the State's closing argument. We affirm the judgment of the motion court.

### Factual and Procedural Background

*Facts*

Viewed in the light most favorable to the jury's verdict, *Staten v. State*, 624 S.W.3d 748, 750 (Mo. banc 2021), the facts are as follows.

---

[1] All Rule references are to the Missouri Supreme Court Rules (2017), unless otherwise indicated.

In 2012, Dent began dating Toshiko Thompson.[2] Thompson lived with her grandmother at 1933 Switzer in Jennings, Missouri. Dent moved in with Thompson in June 2013.

Around October 2013, Thompson met Marvin Barnes. Initially, they were just friends and Barnes gave Thompson rides home from work. In 2014, they began a romantic relationship, but Dent was still living with Thompson. Dent soon became aware of Barnes. On one occasion, Dent walked up on Thompson and Barnes as they sat in Barnes's car. Dent told Thompson to get out of the car and warned Barnes he better not see him around there again.

In early 2014, Thompson ended her relationship with Dent and told him to move out of her grandmother's house. Dent continued to contact Thompson over the phone and in person against Thompson's wishes.

On June 23, 2014, Barnes gave Thompson a ride home. While Thompson took a shower on the main floor, Barnes waited in her bedroom upstairs. After showering, Thompson went to her bedroom, where Barnes was sitting in a chair.

As Thompson got dressed, her grandmother yelled that Dent was at the door. Dent ran into the house and up the stairs uninvited. Thompson tried to close her bedroom door to keep Dent from seeing Barnes, but Dent overpowered Thompson and pushed the door open. Dent was angry and accused Thompson and Barnes of having sex. Dent tried to get at Barnes, who was still sitting in the chair, while Thompson stood between them in an effort to stop him. Dent pulled a knife, pushed Thompson onto her bed, and stabbed Barnes in the neck before he could get out of the chair.

At trial, Dent testified in his own defense that he and Barnes exchanged blows. Dent claimed Barnes grabbed a knife off Thompson's dresser, and Dent snatched the knife away from

[2] The record refers to Ms. Thompson as "Toshiko" and "Toshkio." Because the record more consistently refers to her as "Toshiko," we use that spelling.

2

Barnes. When Barnes jumped at him, Dent jabbed at Barnes one time to repel him in self-defense.

In support of Dent's self-defense claim, Dent's counsel cross-examined Barnes at trial. Barnes agreed with Dent's counsel that Dent did not make "repeated jabs" at him and stabbed him only once. Dent's counsel also questioned Barnes's testimony that he was seated when Dent stabbed him. Dent's counsel asked Barnes to stand up and state his height. Barnes stood and stated he was five feet, three inches tall. Dent's counsel then directed Dent to stand up, and Barnes confirmed Dent was "quite taller." Barnes agreed with Dent's counsel that, "if [Dent] was holding his hand out like this, it would be at your neck; right?" Barnes nonetheless repeated on re-direct that Dent stabbed "down towards me as I was getting up."

After the stabbing, Dent fled the house, but called Thompson while police were on the scene. Dent told Thompson she should not have been having sex and if he could not have her, no one could. He also admitted he was "trying to kill" Barnes.

In the meantime, paramedics arrived and transported Barnes to Barnes-Jewish Hospital. At trial, the State offered Barnes's hospital records, totaling 1,132 pages, into evidence. Dent's counsel objected on hearsay and other grounds. The trial court overruled the objections, but suggested the parties and the court would discuss which of the records could go back to the jury. The court told Dent's counsel that, if the records contained hearsay, he should bring it to the court's attention regarding each individual record. Dent's counsel did not raise the medical records again, and the record is unclear whether any of the medical records were sent to the jury room or otherwise published to the jury.

Dr. Stephen Liang, Barnes's treating physician, testified Barnes was stabbed in his sternal notch, the area between his collarbones just above the breast bone. CT scans revealed a

laceration to Barnes's mammary artery, located behind the breast bone and below the collarbone area, resulting in blood pooling in Barnes's chest cavity. Had Barnes not undergone an emergency procedure to stop the bleeding, he could have died.

In closing argument, the State argued that Dr. Liang's testimony that Barnes was stabbed at a downward angle corroborated Barnes's testimony that he was stabbed while sitting in the chair, not while standing up. The State concluded, "You can use your common sense that if . . . the entrance wound is up high but the artery injury is down low, that the knife was penetrated in the neck and down behind the chest bone to lacerate that artery." The prosecutor nevertheless conceded that the stab wound might be consistent with Barnes's standing, but that was less likely than if Barnes was sitting.

For his part, Dent's counsel conceded Barnes was stabbed in the neck, and acknowledged the evidence that Barnes was stabbed at a downward angle. He argued, however, that the knife wound was at a downward angle because Barnes was much shorter than Dent, and therefore did not necessarily prove that Barnes was sitting when he was stabbed. Counsel continued that, if Dent was trying to kill Barnes, he would have stabbed him "again and again and again," but he did not stab him again.

Dent was charged with burglary in the first-degree, assault in the first-degree, and armed criminal action. The trial court instructed the jury on self-defense. The jury acquitted Dent of burglary in the first-degree, but found him guilty beyond a reasonable doubt of assault in the first-degree and armed criminal action. The trial court entered judgment in accordance with the jury's verdicts on February 18, 2016. On April 21, 2016, the trial court sentenced Dent to concurrent terms of 17 years in prison.

4

*Rule 29.15 Motion*

On September 25, 2017, Dent timely filed his initial Rule 29.15 motion to vacate, set aside or correct the judgment. Dent was appointed counsel and, on July 26, 2018, counsel timely filed Dent's amended Rule 29.15 motion. In the motion, Dent claimed, among other things, his trial counsel provided ineffective assistance by failing to review or present evidence from Barnes's medical records favorable to his defense. More specifically, Dent asserted the medical records revealed additional injuries consisting of abrasions to Barnes's wrist and elbow, and a puncture wound to his groin, and trial counsel should have called those injuries to the jury's attention to support Dent's self-defense claim. Dent also claimed trial counsel was ineffective for failing to object to the State's argument about the angle of Barnes's stab wound.

On January 28, 2022, after hearing argument on Dent's amended motion, the motion court issued its findings of fact, conclusions of law, order, and judgment denying the motion. Regarding Dent's first claim, the court concluded defense counsel was not ineffective for avoiding the other injuries to Barnes, which were favorable to the State and "would have made the self-defense claim even less believable." The court similarly denied Dent's second claim because the State's closing argument was supported by the evidence at trial and any objection would have been meritless.

Dent appeals.

**Standard of Review**

Appellate review of the motion court's ruling is limited to whether its findings and conclusions are clearly erroneous. *McLemore v. State*, 635 S.W.3d 554, 559 (Mo. banc 2021) (citing Rule 29.15(k)). When reviewing the denial of post-conviction relief, this Court interprets the facts in the light most favorable to the verdict. *Staten*, 624 S.W.3d at 750.

5

A movant is entitled to an evidentiary hearing on his Rule 29.15 motion only if: (1) the movant pleaded facts, not conclusions, warranting relief; (2) the facts alleged are not refuted by the record; and (3) the matters complained of resulted in prejudice to the movant. *McLemore*, 635 S.W.3d at 559.

## Discussion

Dent argues the motion court clearly erred in denying his amended Rule 29.15 motion without an evidentiary hearing because trial counsel was ineffective for failing to present the medical records relevant to his self-defense claim and failing to object to the State's closing argument regarding the angle of the stab wound.

To obtain post-conviction relief on the basis of ineffective assistance of counsel, a movant must satisfy the two-pronged *Strickland* standard. *McFadden v. State*, 619 S.W.3d 434, 445 (Mo. banc 2020) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). If the defendant fails to satisfy either prong, we need not consider the other. *Staten*, 624 S.W.3d at 750.

A movant must first demonstrate that counsel's performance was deficient. *McFadden*, 619 S.W.3d at 445. Performance is "deficient" if it fails to rise to the level of skill and diligence that would be demonstrated by a reasonably competent attorney under similar circumstances. *Id.* Second, a movant must prove he was prejudiced by counsel's deficient performance. *Id.* "Prejudice" occurs when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.*

*Point I — Failure to Present Medical Records*

In his first point, Dent argues his trial counsel was ineffective for failing to present the medical records showing additional injuries to Barnes in support of Dent's claim of self-defense. Dent's argument fails for a variety of reasons.

6

As an initial matter, the medical records were admitted into evidence by the State. For Dent's counsel to have offered the same records in the defense case would have been cumulative, and counsel is not ineffective for failing to present cumulative evidence. *See McFadden*, 619 S.W.3d at 451.

More to the point, to the extent Dent's argument is that counsel did not review the medical records or publish to the jury the pages identifying Barnes's additional injuries, it likewise fails. "Ineffective assistance of counsel will not lie where the conduct involves the attorney's use of reasonable discretion in a matter of trial strategy, and it is the exceptional case where a court will hold a strategic choice unsound." *Shockley v. State*, 579 S.W.3d 881, 898 (Mo. banc 2019). The selection of evidence is a matter of trial strategy, virtually unchallengeable in an ineffective assistance claim. *Tisius v. State*, 519 S.W.3d 413, 426 (Mo. banc 2017).

Dent testified he jabbed at Barnes in self-defense only once, not multiple times. Barnes corroborated that Dent stabbed him only once. Based on that evidence, Dent's trial counsel argued Dent was not trying to kill Barnes and was only defending himself. To have directed the jury to additional injuries Dent inflicted on Barnes, including abrasions to his wrist and elbow and a puncture wound to his groin, would have undercut Dent's testimony, his counsel's closing argument, and the reasonable trial strategy of minimizing the injuries to Barnes. *See generally Anderson v. State*, 564 S.W.3d 592, 610 (Mo. banc 2018) (holding trial counsel reasonably chose not to call expert witness to avoid undercutting movant's testimony); *Clayton v. State*, 63 S.W.3d 201, 209 (Mo. banc 2001) ("It is not ineffective assistance for an attorney not to call a witness that might undermine the whole theory of trial.").

Even assuming *arguendo* a reasonable alternative strategy could have been to emphasize Barnes's additional injuries to suggest a struggle and bolster Dent's self-defense claim, counsel's

7

opting not to do so was not deficient. "It is not ineffective assistance of counsel for an attorney to pursue one reasonable trial strategy to the exclusion of another, even if the latter would also be a reasonable strategy." *Shockley*, 579 S.W.3d at 896 (quoting *Clayton*, 63 S.W.3d at 207-08).

Point I is denied.

*Point II — Failure to Object to the State's Closing Argument*

In his second point, Dent asserts his counsel was ineffective for failing to object to the State's closing argument regarding the angle of the stab wound because the argument was not supported by the evidence at trial.

To prevail on a claim that counsel was ineffective for failing to object to closing argument, a movant must prove that the failure to object was not a matter of trial strategy and that such failure prejudiced the movant. *Tisius*, 519 S.W.3d at 428-29; *see also West v. State*, 244 S.W.3d 198, 200 (Mo. App. E.D. 2008) (listing four requirements: (1) the objection would have been meritorious; (2) the failure to object resulted in a substantial deprivation of movant's right to a fair trial; (3) the failure to object was not strategic; and (4) the failure to object was prejudicial).

Any objection by Dent's counsel would have been meritless. The State is granted wide latitude in closing arguments, provided its closing argument does not go beyond the evidence presented at trial. *State v. Minor*, 648 S.W.3d 721, 732 (Mo. banc 2022). A prosecutor is allowed to argue the evidence and all reasonable inferences from the evidence during closing arguments. *Id.*

Barnes testified that Dent stabbed "down towards" him while he was attempting to get up from the chair. The treating doctor testified to the stab wound to Barnes's sternal notch and the internal injuries below the stab wound and behind Barnes's breast bone. That evidence supported the State's argument that Dent stabbed Barnes at a downward angle, as well as the inference that

8

Barnes was seated when he was stabbed. *See Minor*, 648 S.W.3d at 732. Regardless, the State, perhaps anticipating defense counsel's counter-argument, conceded that the downward angle of the stab wound did not necessarily mean that Barnes was sitting when Dent stabbed him. The State's argument was not improper, and any objection by Dent's counsel would have been meritless. Counsel will not be deemed ineffective for failing to make a non-meritorious objection. *See McFadden*, 619 S.W.3d at 458; *Tisius*, 519 S.W.3d at 429.

Even if an objection would have been meritorious, counsel's opting not to object was a reasonable trial strategy. *See Hosier v. State*, 593 S.W.3d 75, 92 (Mo. banc 2019) ("In many instances, seasoned trial counsel do not object to otherwise improper questions or arguments for strategic purposes."); *see also McLemore*, 635 S.W.3d 560 (Mo. banc 2021) ("[I]t can be reasonable trial strategy not to object to improper statements in the state's closing argument.").

Dent's position at trial was not to deny that Dent stabbed Barnes at a downward angle. Instead, counsel argued that, if Dent stabbed Barnes at a downward angle, he did so not because Barnes was seated in a chair, but because Barnes was much shorter than Dent. Dent's trial counsel made that point in closing argument: "So if Mr. Dent is taller, that would corroborate the point that, yeah, of course it was down; he's shorter; that's why it happened." An objection to the State's argument that Barnes was stabbed at a downward angle would have been contrary to counsel's trial strategy. As we already have explained, failure of counsel to undermine his own trial strategy does not render counsel's assistance deficient. *See generally Anderson*, 564 S.W.3d at 610; *Clayton*, 63 S.W.3d at 209.

Point II is denied.

9

**Conclusion**

Dent failed to establish any deficiency on the part of counsel or any prejudice to himself, and the record refuted Dent's allegations of ineffective assistance of counsel. *See McLemore*, 635 S.W.3d at 559; *McFadden*, 619 S.W.3d at 445. The motion court thus did not clearly err in denying Dent's amended Rule 29.15 motion without an evidentiary hearing.

The judgment of the motion court is affirmed.

_____
Cristian M. Stevens, J.

Gary M. Gaertner, Jr., P.J., and
John P. Torbitzky, J., concur.