EDWARD R. ARDINI, JR., JUDGE
Freddie McKee ("McKee") appeals from the judgment of the motion court denying his Rule 29.15 motion for post-conviction relief following an evidentiary hearing. Finding no error, we affirm.
Factual and Procedural Background[1]
On April 3, 2012, McKee and his girlfriend, Jenna Scott ("Scott"), left Columbia *454 and traveled to Jefferson City to see a mutual friend, Alejandria Omar Smith ("Smith"). After meeting Smith, McKee demanded Scott drive the group to Kansas City, telling her that "something bad would happen" unless she did so. Scott relented and the three set out for Kansas City with McKee in the front passenger seat giving directions while Smith sat in the back seat. They arrived at their destination and parked next to another vehicle. McKee left Scott's vehicle for about five minutes before returning and the three heading back to Columbia. During the return trip, McKee told Scott to watch her speed because he had noticed a police cruiser behind them.
Scott's car was in fact being followed by a trooper with the Missouri State Highway Patrol who had noted that Scott's license plate lamp was out. Eventually, the trooper activated her emergency equipment and initiated a traffic stop of Scott's vehicle for an equipment failure violation. Scott testified that, upon being pulled over, McKee began moving around in the front passenger seat, pulling items out of his pockets and placing them in the glove box.[2] During this time, Smith was texting in the back seat. Scott did not see Smith transfer anything to McKee.
The trooper approached the vehicle and asked Scott for her license and registration. Scott reached for the glove box to retrieve the requested information, but McKee started yelling and told her not to open it. The trooper testified that she saw a clear plastic bag containing a green leafy substance on the floor between the base of the front passenger seat and the front passenger door and what appeared to be shake (small pieces of marijuana leaves) on McKee's lap. The trooper also noted that McKee was rocking back and forth, gritting his teeth, and staring straight ahead.
The trooper asked who the marijuana belonged to and McKee responded, "It's mine." She then ordered McKee to get out of the car. As McKee complied, a pink and purple capsule fell from his lap. When the trooper asked if the capsule also belonged to him, McKee denied it was his.
While the first trooper continued dealing with McKee, a second trooper arrived and began questioning Smith. Smith was patted down and two large baggies were found on his person, which he admitted contained marijuana. Meanwhile, the first trooper searched the vehicle and found two additional large baggies of marijuana in the glove box. The two baggies from the glove box were similar in appearance to the baggies found on Smith's person. McKee denied that the marijuana in the glove box or found on Smith's person was his.
McKee, Scott, and Smith were taken into custody. After being informed of his rights, McKee agreed to provide a written statement. He indicated that he and Smith had persuaded Scott to drive them to Kansas City and that their intent was to obtain a half pound of marijuana. He stated that he picked up the marijuana from the vehicle Scott parked next to in Kansas City and, upon returning to Scott's vehicle, handed all of the marijuana over to Smith. He further told police that when the trooper pulled Scott over, Smith threw two baggies of marijuana and the pink and purple capsule onto his lap. McKee stated he placed these two baggies in the glove box. He again admitted that the small bag of marijuana found on the floor between the front passenger seat and door belonged to him.
McKee was charged with one count of the class C felony of possession of a controlled *455 substance related to the pink and purple capsule, which was determined through laboratory analysis to be 3,4-methylenedioxymethcathinone or methylone, and one count of the Class C felony of possession of more than 35 grams of marijuana. The case proceeded to trial where, in addition to the evidence above, the jury heard testimony from a lab supervisor with the Missouri State Highway Patrol crime lab. The crime lab supervisor testified that the green leafy substance contained in all five baggies found in Scott's vehicle or on Smith's person was marijuana. The content of the two baggies found in the glove box weighed 54.4 and 54.46 grams, respectively. The content of the two baggies found on Smith's person weighed 54.52 and 27.45 grams, respectively. The small bag found on the floor between the front passenger seat and vehicle door weighed less than 1 gram. McKee did not testify and presented no evidence.
The jury found McKee not guilty of possessing a controlled substance related to the pink and purple capsule but guilty of possessing more than 35 grams of marijuana. The trial court, having earlier found McKee to be a prior and persistent offender, sentenced McKee to fifteen years imprisonment. McKee's conviction was affirmed by this Court on direct appeal. State v. McKee , 415 S.W.3d 135 (Mo. App. W.D. 2013).[3]
McKee timely filed his pro se motion for post-conviction relief pursuant to Supreme Court Rule 29.15.[4] The motion court thereafter appointed the public defender to represent McKee. The public defender did not file an amended motion and instead filed a document entitled Counsel's Statement in Lieu of an Amended Motion Under Rule 29.15, which asserted that "there are no potentially meritorious claims known to counsel." The initially assigned public defender later withdrew from the case and a new public defender was assigned to represent McKee. His new counsel filed a motion to strike the previously filed statement in lieu of an amended motion. Following a hearing on the issue of abandonment, the motion court granted McKee's motion to strike and permitted the filing of an Amended Motion to Vacate, Set Aside, or Correct Judgment and Sentence and Request for an Evidentiary Hearing. An evidentiary hearing was later held on the amended motion, after which the motion court issued findings of fact and conclusions of law denying post-conviction relief. McKee now appeals.
Discussion
Our review of the denial of a motion for post-conviction relief is limited to determining whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k); Tisius v. State , 519 S.W.3d 413, 420 (Mo. banc 2017). "A motion court's findings and conclusions are clearly erroneous 'if, after reviewing the entire record, this Court is left with the definite and firm impression that a mistake has been made.' " Tisius , 519 S.W.3d at 420 (quoting Barton v. State , 486 S.W.3d 332, 336 (Mo. banc 2016) ). "The motion court's findings are presumed correct" and we defer to the motion court on matters of credibility. Davis v. State , 486 S.W.3d 898, 905 (Mo. banc 2016).
McKee raises six points on appeal, each alleging the motion court erred in denying his various claims of ineffective assistance of trial and appellate counsel. To be entitled to post-conviction relief for ineffective assistance of counsel, a movant *456 must show: (1) that his counsel "failed to exercise the level of skill and diligence that a reasonably competent counsel would in a similar situation, and (2) he or she was prejudiced by that failure." Tisius , 519 S.W.3d at 420 (quoting McIntosh v. State , 413 S.W.3d 320, 324 (Mo. banc 2013) ); Strickland v. Washington , 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This two-pronged test is commonly known as the Strickland test, and the movant bears the burden of proving both prongs by a preponderance of the evidence. McNeal v. State , 500 S.W.3d 841, 844 (Mo. banc 2016). In order to satisfy the first prong, a movant "must overcome the strong presumption that counsel's conduct was reasonable and effective" and identify "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." Hoeber v. State , 488 S.W.3d 648, 655 (Mo. banc 2016) (quoting Johnson v. State , 406 S.W.3d 892, 898 (Mo. banc 2013) ). "To establish Strickland prejudice, a movant must prove that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " Tisius , 519 S.W.3d at 420 (quoting McIntosh , 413 S.W.3d at 324 ). "A reasonable probability exists when there is a probability sufficient to undermine confidence in the outcome." Id. (quoting McLaughlin v. State , 378 S.W.3d 328, 337 (Mo. banc 2012) ).
A. Introduction of Alleged Hearsay Statement
McKee's first point on appeal alleges that his trial counsel was ineffective for failing to object to the trooper's reference during her testimony to a statement made by Smith that the marijuana in the vehicle did not belong to him and that he was willing to disclose who the marijuana belonged to in exchange for leniency. McKee asserts the statement was inadmissible hearsay that, under the circumstances, necessarily implicated him and created an enhanced impression of his guilt. His second point on appeal claims that his appellate counsel was ineffective for failing to request plain error review of this issue on direct appeal. We consider these points together.
The statement in question arose during the following examination of the trooper:
Q. Did you ask the occupants in the vehicle about the marijuana in the glove compartment?
A. Yes. At that time I seized all the evidence. I went to Mr. McKee and asked him who the marijuana belonged to. He said it wasn't his. Then I asked Ms. Scott who the marijuana belonged to. She advised it wasn't hers. And then I asked Mr. Smith who the marijuana belonged to. He advised that somebody in the vehicle asked him to put the Baggies of marijuana in his pocket, but it wasn't his, but he would tell me who told him to put the Baggies of marijuana if I promised that he wouldn't go to jail.
Q. Did you make any kind of promises?
A. No. I can't make promises like that. And I advised Mr. Smith I could not make him a promise.
It should be noted that McKee does not raise any issue regarding the trooper's reference to either his own statement or that of Scott, both of which also deny ownership of the marijuana. Instead, his claim is focused solely on his counsel's failure to object to the trooper's reference to Smith's statement. McKee contends that Smith's denial that the marijuana was his coupled with his offer to identify whom the marijuana belonged to was "incredibly prejudicial" and "created an artificially more damning picture of the evidence against [McKee]" because "the evidence *457 before the jurors showed only [McKee] charged with a crime, and [Smith] denying ownership of the marijuana at issue." We disagree.
Contrary to McKee's repeated assertions, there is nothing in the above quoted testimony of the trooper that can be considered so prejudicial as to entitle him to post-conviction relief under the Strickland test. As the motion court noted in its findings of fact:
All three parties denied ownership of the marijuana, and the only difference among the statements, only one of which [McKee] now complains, is that the back occupant said that he would name the owner if the trooper would promise him that he would not go to jail. Clearly the statements were hearsay, but the importance attributed to the hearsay is curious. [McKee] objects to neither his self-serving hearsay nor the driver's self-serving hearsay, but only to the self-serving hearsay of the back seat passenger, whose offer to be a snitch against an unnamed person in the front seat of the car was immediately rejected by the trooper.
Given that the trooper testified that all three of the occupants of the car denied ownership of the marijuana, we do not find McKee's argument that Smith's statement in particular prejudiced him to be persuasive. Moreover, McKee's argument fails to account for the otherwise overwhelming evidence of his guilt presented at trial.
Shortly after his arrest, McKee provided a written statement to police in which he admitted that he and Smith traveled to Kansas City for the express purpose of obtaining a half pound of marijuana. He further stated that after arriving in Kansas City, he retrieved the marijuana from a nearby parked car before handing all of it over to Smith. Finally, he claimed that when Scott's car was pulled over by law enforcement, Smith handed him two baggies of marijuana, which he proceeded to hide in the vehicle's glove box. As explained in this Court's memorandum opinion affirming McKee's conviction on direct appeal, this evidence alone was sufficient for the jury to reasonably infer that McKee knew of the presence and nature of the substance found in Scott's glove box and on Smith's person, and thus he had actual possession of the marijuana, as it was "within [McKee's] easy reach and convenient control." Missouri Revised Statutes § 195.010(34) (2011). Alternatively, the jury could have reasonably concluded that McKee was in constructive possession of the marijuana as he had "the power and the intention ... to exercise dominion or control over the substance either directly or through another person." Id. ; See State v. Bacon , 156 S.W.3d 372, 377 (Mo. App. W.D. 2005) (holding that possession is established if the State shows a conscious and intentional possession of a controlled substance, either actual or constructive, and an awareness of the presence and nature of the substance).
Considering the evidence presented at trial establishing McKee's guilt, together with the fact that Smith's denial of guilt which McKee now complains of was presented alongside the denial of each of the other individuals in the vehicle, McKee has failed to establish that a successful objection by trial counsel resulting in the exclusion of Smith's statement would have altered the outcome of the trial and thus he has failed to satisfy the second prong of the Strickland test. See Taylor v. State , 382 S.W.3d 78, 82 (Mo. banc. 2012) (where facts present overwhelming evidence of guilt, movant has failed to establish prejudice prong of Strickland test and thus is not entitled to post-conviction relief). Consequently, the trial court did not clearly err in denying this claim.
*458 A similar conclusion must be reached regarding McKee's claim of ineffective assistance of appellate counsel. "To prevail on a claim of ineffective assistance of appellate counsel, the movant must establish that counsel failed to raise a claim of error that was so obvious that a competent and effective lawyer would have recognized and asserted it." Williams v. State , 168 S.W.3d 433, 444 (Mo. banc 2005). In addition, "[m]ovant must demonstrate that had appellate counsel raised the allegation of error, there is a reasonable probability that the outcome of the appeal would have been different." Mallow v. State , 439 S.W.3d 764, 770 (Mo. banc 2014). Because McKee's counsel failed to assert a timely objection to the alleged hearsay statement, the issue was not preserved and any review of the issue on direct appeal would have been for plain error. State v. Brink , 218 S.W.3d 440, 448 (Mo. App. W.D. 2006). "Plain error occurs when an alleged error provides 'substantial grounds for believing a manifest injustice or miscarriage of justice occurred.' " State v. Smith , 522 S.W.3d 221, 232 (Mo. banc 2017) (quoting State v. Taylor , 466 S.W.3d 521, 533 (Mo. banc 2015) ). Consistent with our previous determination that the exclusion of the alleged hearsay statement would not have altered the outcome of the trial due to the overwhelming evidence of McKee's guilt, we find that a claim on appeal directed at the reference to Smith's statement would have met a similar fate under plain error review due to the absence of any credible basis upon which to assert the evidence resulted in a manifest injustice. Therefore, the motion court did not clearly err in finding McKee's appellate counsel was not ineffective for failing to raise this claim on direct appeal. See Morse v. State , 462 S.W.3d 907, 913 (Mo. App. E.D. 2015) ("Appellate counsel is not ineffective for failing to raise a non-meritorious claim...." (citing Glover v. State , 225 S.W.3d 425, 429 (Mo. banc 2007) )). McKee's first and second points on appeal are denied.
B. Mental Health Issues
McKee's third point on appeal contends that his trial counsel was ineffective for failing to bring McKee's mental health issues to the attention of the trial court at sentencing. He argues that had his trial counsel informed the trial court of his history of mental illness, he would have had a reasonable chance of receiving a lower sentence than the sentence ultimately imposed. In a similar vein, McKee's fourth point asserts that his trial counsel was ineffective for failing to present evidence of his mental illness during the trial, arguing that his mental illness would have provided an explanation for some of his behavior during the traffic stop, which he asserts the State used to establish he was aware of the presence of marijuana in the car.
During the evidentiary hearing, expert testimony was offered that McKee suffered from schizoaffective disorder, bipolar type, and/or possible neuro-cognitive disorder. The evidence further showed that McKee had been hospitalized for mental illness at least thirty-two times and, at the time of the evidentiary hearing, he was being treated with antipsychotic medication as well as other medications to address side effects. In addition, McKee's expert opined that his mental illness would likely result in symptoms that would cause people to feel uncomfortable around McKee. Such symptoms included "his inability to make eye contact, his slow posture steps, his ponderous slow thinking, his lack of normal hygiene, and inattentiveness to normal conversations."
We will first address McKee's argument that his trial counsel was ineffective for failing to raise his mental health condition *459 at sentencing. It is significant that the same judge presided over both the trial and the post-conviction proceedings because, contrary to the premise underlying this claim (that the trial court was unaware of McKee's mental health history at the time of sentencing), the motion court specifically noted at the conclusion of the evidentiary hearing that it had been familiar with McKee's mental health issues at the time of sentencing, as they had been included in the sentencing assessment report. This fact alone substantially undermines McKee's argument. See Cherco v. State , 309 S.W.3d 819, 831 (Mo. App. W.D. 2010) ("it is difficult to envision a scenario where the weighty burden of establishing prejudice can be sustained by [a claim that presenting mitigating evidence would have resulted in a lower sentence] given the indeterminate nature of sentencing. That is particularly true where, as here, the sentencing court and the motion court are one in the same, rendering a motion court's finding that character witnesses would not have ameliorated the sentence virtually unchallengeable under the clearly erroneous standard.") Moreover, the motion court specifically explained that the sentence it imposed was "based upon [McKee's] lengthy criminal history, and the major role he played in obtaining illegal narcotics in Kansas City, and attempting to transport the substances to Columbia." In light of the foregoing, McKee has failed to establish that the motion court clearly erred when it concluded that McKee had not satisfied the prejudice prong of the Strickland test. Therefore, his third point is denied.
McKee's fourth point on appeal is equally without merit. McKee argues that his trial counsel was ineffective for failing to present evidence relating to his history of mental illness at trial. He claims that the evidence of mental illness would have provided an alternative explanation for the nervous behavior observed by the trooper during the traffic stop, which he argues was relied upon by the State to demonstrate consciousness of guilt. However, McKee's argument again overlooks the overwhelming evidence of his guilt including his own admissions that he and Smith had convinced Scott to drive them to Kansas City to obtain a half pound of marijuana, that he had been successful in this effort, and that he had been responsible for placing the marijuana in the car's glove box. This is in addition to the baggie of marijuana in plain view that McKee admitted belonged to him. Therefore, even if we were to assume arguendo that evidence of McKee's mental illness would have provided an explanation for his behavior during the traffic stop, it would not have mitigated the remaining inculpatory evidence against him and thus would not have created a reasonable probability of changing the outcome of the trial. Consequently, McKee's fourth point must be, and is, denied.
C. Trial Court Response to Jury Question
McKee's fifth point on appeal contends that his trial counsel was ineffective for failing to request the trial court respond to a question posed by the jury during its deliberations with greater specificity. He argues that this failure resulted in confusion by the jury regarding its duty under the provided instructions. His sixth point on appeal argues that his appellate counsel was ineffective for failing to raise the same issue on direct appeal.
During its deliberations, the jury propounded two questions. Relevant to this claim was the jury's question "[d]oes a not-guilty decision have to be unanimous?" In response, the trial court directed the jury to consider Instruction No. 11 specifically *460 along with the other provided instructions. McKee concedes that this response was legally accurate, but argues that it was not specific enough to quell the jury's confusion because it referred them to the whole of Instruction No. 11. He maintains that by failing to refer the jury to the relevant portion of the "lengthy instruction," the jury was likely unable to determine the correct answer. We find this argument to be without merit.
Instruction No. 11 is taken verbatim from Missouri Approved Instruction 302.05 and, as submitted to the jury, reads in its entirety as follows:
When you retire to your jury room you will first select one of your number to act as your foreperson and to preside over your deliberations.
You will then discuss the case with your fellow jurors. Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.
Your verdict, whether guilty or not guilty, must be agreed to by each juror. Although the verdict must be unanimous, the verdict should be signed by your foreperson alone.
When you have concluded your deliberations, you will complete the applicable forms to which you unanimously agree and return them with all unused forms and the written instructions of the Court.
We find this instruction to be straight-forward and easy to understand and can discern no basis to believe that the jury was incapable of resolving its question without becoming irrecoverably lost because the trial court did not direct it to a specific paragraph or sentence contained within it.
Moreover, the response to the jury's question was clear, unambiguous, and in accord with the consistent direction provided by appellate courts to the trial bench. "[T]he response to a jury question is within the trial court's sound discretion, and the practice of exchanging communications between the judge and jury is not recommended." State v. Moore , 518 S.W.3d 877, 885 (Mo. App. E.D. 2017) (citing Roberts v. State , 232 S.W.3d 581, 584 (Mo. App. E.D. 2007) ). "Therefore, neutral and generic responses about being guided by the evidence presented and following the instructions previously given are the safest, most favored responses." Id. (citing Roberts , 232 S.W.3d at 584 ); State v. Thompson , 147 S.W.3d 150, 161 (Mo. App. S.D. 2004) ("Neutral and generic responses about being guided by the evidence presented and to follow the instructions previously given are therefore not only the safest but the most favored." (quoting State v. Guinn , 58 S.W.3d 538, 548 (Mo. App. W.D. 2001) )); State v. Johnston , 957 S.W.2d 734, 752 (Mo. banc 1997) (trial court's response to jury question that jury was "to be guided by instructions given" was not improper as such a response "merely suggested to the jury that they had their answer if they would consider the correct, clear and unambiguous instructions already given."). As the trial court's response to the jury's question was proper, it cannot be said that McKee's trial counsel was ineffective for failing to request greater specificity in the answer or lodging an objection as such an effort would have been without a basis. See Tisius v. State , 519 S.W.3d 413, 429 (Mo. banc 2017) ("[t]he failure to make meritless objections does not constitute ineffective assistance of counsel.").
A similar conclusion must also be reached regarding McKee's claim that his appellate counsel was ineffective for not raising this issue on direct appeal. As stated previously, in order to prevail on such a *461 claim, a "[m]ovant must demonstrate that had appellate counsel raised the allegation of error, there is a reasonable probability that the outcome of the appeal would have been different." Mallow v. State , 439 S.W.3d 764, 770 (Mo. banc 2014). For this reason, numerous courts have held that "[a]ppellate counsel is not ineffective for failing to raise a non-meritorious claim...." Morse v. State , 462 S.W.3d 907, 913 (Mo. App. E.D. 2015) (citing Glover v. State , 225 S.W.3d 425, 429 (Mo. banc 2007) ). As we have already determined that any attempt to request greater specificity or otherwise object to the trial court's response to the question posed by the jury would have been without a legal basis, we find any attempt by McKee's appellate counsel to raise the issue would have been unsuccessful. Consequently, his appellate counsel was not ineffective for failing to include this point in the direct appeal. McKee's fifth and sixth points on appeal are therefore denied.
Conclusion
The judgment of the motion court is affirmed.
All concur.

Portions of the factual and procedural background are adopted from this court's unpublished memorandum opinion in State v. McKee , 415 S.W.3d 135 (Mo. App. W.D. 2013). All evidence is presented in the light most favorable to the verdict. State v. Baumruk , 280 S.W.3d 600, 607 (Mo. banc 2009).

Scott was not aware of anything of concern in the glove box prior to this point.

Our mandate issued on December 18, 2013.

All references are to Missouri Supreme Court Rules (2017) unless otherwise noted.