

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| JIMMIE L. VERGE, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | WD86065 |
| v. | ) | |
| | ) | OPINION FILED: |
| | ) | June 25, 2024 |
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Adam L. Caine, Judge**

**Before Division Three:** Cynthia L. Martin, Presiding Judge,
Mark D. Pfeiffer and Edward R. Ardini, Jr., Judges

Mr. Jimmie Verge ("Verge") appeals the judgment of the Circuit Court of Jackson County, Missouri ("motion court"), denying, after an evidentiary hearing, his motion for post-conviction relief ("PCR") pursuant to Rule 29.15. We affirm.

## Factual and Procedural History[1]

The events of this case began when Verge and his cousins, Rear Passenger 1 and Rear Passenger 2, decided to rob Front Passenger of his handgun.[2]  On the night of December 14, 2015, Front Passenger, armed with his handgun, rode with Driver to Rear Passenger 1's house.  There, Driver went inside to sell marijuana to Rear Passenger 1 and Rear Passenger 2 and to give them a ride to 73rd and Wabash.  After coming out of the house and getting into the vehicle, Rear Passenger 1 sat behind Driver, and Rear Passenger 2 sat behind Front Passenger.  On the way, Driver noticed an SUV following his vehicle; Rear Passenger 1 identified the SUV's driver as Follower, who had also been inside the house, and claimed Follower was now bringing the money to purchase the marijuana.

When Driver stopped at 73rd and Wabash, Follower—who learned of the planned robbery at the house and had tried to talk the others out of it—parked closely behind and left his headlights on.  Verge, armed with his own gun, walked up to Rear Passenger 2's door and began speaking with him.  Rear Passenger 2 then grabbed Front Passenger from behind, and several shots were fired.  Verge's shots wounded Driver—who ran from the vehicle when the shots were fired—and killed Front Passenger and Rear Passenger 1.

---

[1] "On appeal from the motion court's denial of a Rule 29.15 motion, we view the facts in the light most favorable to the underlying criminal conviction as those facts bear upon the motion court's judgment." *Morrison v. State*, 619 S.W.3d 605, 607 n.1 (Mo. App. W.D. 2021) (citing *McFadden v. State*, 553 S.W.3d 289, 296 n.2 (Mo. banc 2018)).

[2] Many of the underlying facts are taken directly from the memorandum supplementing the written order issued to Verge in his direct appeal, *State v. Verge*, 576 S.W.3d 248 (Mo. App. W.D. 2019), without further attribution.

When Driver returned to the vehicle after the gunfire ceased, Front Passenger's gun was no longer at the scene.

Verge was charged with one count of armed robbery in the first degree, one count of assault in the first degree, two counts of murder in the second degree, and four counts of armed criminal action.

Before trial, Verge told his counsel that he had an alibi for the shooting and identified witnesses who could testify to it: he was at a birthday party with Alibi Witness 1 and Alibi Witness 2 for the whole night of the shooting and had fallen asleep in the same room as the alibi witnesses before the shooting took place. The State and Verge's counsel questioned both alibi witnesses at individual depositions, and they both corroborated Verge's alibi. After reviewing the depositions, Verge's counsel considered both witnesses viable for trial—because they responded reasonably well to the State's questioning—and credible—because their deposition responses were substantially consistent with each other. Considering Verge's representations, his investigation into the available evidence, and his need to rebut the eyewitness identifications of Verge as the shooter, Verge's counsel built his trial strategy around Verge's alibi, believing both witnesses would testify.

At trial, the State's evidence included the testimony of Follower and Driver identifying Verge as the shooter; ballistics analysis demonstrating shots were fired into the vehicle from the outside, which corroborated their eyewitness testimony; a log of Rear Passenger 1's phone calls that showed several calls between him and Verge leading up to the shooting; and cell tower data that showed Rear Passenger 1's phone traveling on

3

the route from his house to the crime scene and Verge's phone connecting with a cell tower near the crime scene. The State also presented incriminating messages from Verge's Facebook account and a log of Verge's phone calls from the night of the shooting—over objection from Verge's counsel that the exhibits were not properly notarized to be admissible under the business-record statute.

When the time came for Verge's case-in-chief, Alibi Witness 2 refused to testify. Verge's counsel, having already promised in his opening statement that the jury would hear an alibi defense, decided to proceed using only Alibi Witness 1's testimony. After Alibi Witness 1 testified to the alibi during his direct examination, the State confronted Alibi Witness 1 with impeachment evidence it had not used during the deposition: (1) the admitted logs of Verge's phone calls, which included several calls between Verge and Alibi Witness 1 during the time the two were supposedly together at the birthday party and after they were supposedly asleep, and (2) Alibi Witness 1's Facebook account. Alibi Witness 1 could not explain why he and Verge had been calling each other when they were together in the same room or how they were able to call each other when they were both supposedly asleep. Alibi Witness 1 further undermined his credibility by refusing to admit to any knowledge of Verge's Facebook account, even after being confronted with images from his own Facebook account, which had "friended" Verge's account and had been tagged in multiple photos along with Verge's account.

The jury found Verge guilty of all charges, and Verge was sentenced to concurrent sentences of: thirty years for the robbery conviction, thirty years for each murder

4

conviction, twenty-five years for the assault conviction, and forty-five years for each armed criminal action conviction.

In his direct appeal, Verge challenged—in relevant part—the admissibility of his Facebook posts and the phone records used to cross-examine Alibi Witness 1 under the theory that they were not properly notarized as business records. This court agreed that the trial court erred in admitting both pieces of evidence but nonetheless affirmed Verge's convictions because Verge was unable to establish that excluding the evidence would have changed the outcome of trial given the strength of the unchallenged evidence.

Verge then filed a PCR motion pursuant to Rule 29.15,[3] which claimed—in relevant part—that his trial counsel provided ineffective assistance by unreasonably proceeding with the alibi defense instead of simply denying the prosecution's case. Verge claimed the trial strategy was unreasonable because Verge's counsel should have known the impeachment of Alibi Witness 1 though Verge's phone records would demonstrate that the alibi was not true and would undermine the credibility of his entire defense. The motion court denied Verge's PCR motion, and Verge timely appealed.

**Point on Appeal**

In his single point on appeal, Verge argues the motion court clearly erred in denying his claim that his counsel provided constitutionally ineffective assistance by relying on the alibi defense instead of simply denying the prosecution's case.

---

[3] All rule references are to I MISSOURI COURT RULES - STATE 2019.

**Standard of Review**

"Appellate review of a motion court's dismissal of a post-conviction relief motion is limited to determining whether the findings and conclusions of law are clearly erroneous." *Propst v. State*, 535 S.W.3d 733, 735 (Mo. banc 2017) (citing *Price v. State*, 422 S.W.3d 292, 294 (Mo. banc 2014)); *see also* Rule 29.15(k). "A motion court's findings and conclusions are clearly erroneous if this Court 'is left with the definite and firm impression that a mistake has been made' after a review of the entire record." *Id.* (quoting *Price*, 422 S.W.3d at 294). "The motion court's findings of fact and conclusions of law are presumed to be correct." *Beck v. State*, 637 S.W.3d 545, 551 (Mo. App. W.D. 2021) (internal quotation marks omitted) (quoting *Hays v. State*, 360 S.W.3d 304, 309 (Mo. App. W.D. 2012)). We "defer[] to the [motion] court's factual findings and credibility determinations" and "accept[] the [motion] court's findings as to trial counsel's knowledge and strategic decisions." *Zink v. State*, 278 S.W.3d 170, 178 (Mo. banc 2009) (citations omitted); *Jolley v. State*, 678 S.W.3d 700, 706 (Mo. App. W.D. 2023) ("[W]e defer to the motion court's findings that S.W. and A.B. were not credible witnesses."). The motion court's judgment "will be affirmed if cognizable under any theory, regardless of whether the reasons advanced by the [motion] court are wrong or not sufficient." *Driskill v. State*, 626 S.W.3d 212, 224 n.6 (Mo. banc 2021) (internal quotations omitted).

**Analysis**

"To be entitled to post-conviction relief for ineffective assistance of counsel, a movant must show by a preponderance of the evidence that his or her trial counsel failed

6

to meet the *Strickland* test." *Watson v. State*, 520 S.W.3d 423, 435 (Mo. banc 2017) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).  Under *Strickland*, the movant must demonstrate:  "(1) his trial counsel failed to exercise the level of skill and diligence that a reasonably competent trial counsel would in a similar situation, and (2) he was prejudiced by that failure."  *Id.* (citing *Strickland*, 466 U.S. at 687).  "*Strickland* . . . calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind."  *Harrington v. Richter*, 562 U.S. 86, 110 (2011).  If the movant fails to prove either prong, relief cannot be granted.  *Hecker v. State*, 677 S.W.3d 507, 512 (Mo. banc 2023).  If the movant fails to satisfy either prong, we need not address the other.  *Staten v. State*, 624 S.W.3d 748, 750 (Mo. banc 2021); *Shores v. State*, 674 S.W.3d 127, 133 (Mo. App. W.D. 2023).

To establish the performance prong, "a movant 'must overcome the strong presumption that counsel's conduct was reasonable and effective' and identify 'specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance.'"  *McKee v. State*, 540 S.W.3d 451, 456 (Mo. App. W.D. 2018).  "The question in an ineffective assistance claim is not whether counsel could have or even, perhaps, should have made a different decision, but rather whether the decision made was reasonable under all the circumstances."  *Shockley v. State*, 579 S.W.3d 881, 898 (Mo. banc 2019) (internal quotation marks omitted).  "Reasonable choices of trial strategy, no matter how ill-fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance."  *Id.* (internal quotation marks omitted) (quoting *Anderson v. State*, 196 S.W.3d 28, 33 (Mo. banc 2006)); *State v.*

7

*Dixon*, 969 S.W.2d 252, 258 (Mo. App. W.D. 1998) ("Matters of reasonable trial strategy, including a decision to not call an alibi witness, are virtually unchallengeable and cannot form the basis of a claim for ineffective assistance of counsel.").

"However, for trial strategy to be the basis for denying postconviction relief the strategy must be reasonable." *State v. Hamilton*, 871 S.W.2d 31, 34 (Mo. App. W.D. 1993) (citing *State v. Ervin*, 835 S.W.2d 905, 930 (Mo. banc 1992)). "[I]t is not unreasonable for trial counsel to rely on statements of the defendant in determining what defenses to pursue at trial such that his or her failure to investigate the truthfulness of the statements will not give rise to a claim of ineffective assistance of counsel for failure to investigate." *Johnson v. State*, 674 S.W.3d 22, 32 (Mo. App. W.D. 2023) (alteration in original) (internal quotation marks omitted) (quoting *Anderson v. State*, 66 S.W.3d 770, 777 (Mo. App. W.D. 2002)). "Further, trial counsel is not ineffective simply because she accedes to her client's wishes." *Id.* (citing *Guinan v. State*, 769 S.W.2d 427, 429 (Mo. banc 1989).

At the evidentiary hearing, Verge claimed he did not support his trial counsel's decision to rely on the alibi defense while his trial counsel claimed Verge insisted on presenting it. The motion court resolved this conflicting evidence by crediting Verge's counsel; we must defer to this credibility determination. And, because Verge *insisted* on presenting the alibi at trial, Verge cannot now claim his counsel was ineffective for acceding to his wishes and pursuing the trial strategy he demanded.

Furthermore, Verge has not shown the pretrial decision to pursue the alibi defense was an unreasonable trial strategy. The evidence at the PCR hearing showed that, in

8

deciding to present the alibi defense, Verge's counsel relied on Verge's representation that the alibi was truthful, his own investigation that found two witnesses willing to corroborate the alibi at trial, and the need to rebut the State's evidence that placed Verge at the crime scene. In making determinations on trial strategy, Verge's counsel was entitled to rely on Verge's representations, especially after he investigated the alibi and found multiple witnesses willing to corroborate it at trial. *Gieselman v. State*, 763 S.W.2d 296, 297 (Mo. App. E.D. 1988) (citing *Martin v. State*, 712 S.W.2d 14, 16 (Mo. App. E.D. 1986)) ("We hold that it is not unwarranted for trial counsel to rely upon a client's statements, particularly after trial counsel has made a reasonable investigation.").

Thus, Verge's counsel had a reasonable basis for believing the alibi defense would be a viable strategy at trial. Although the alibi defense was vulnerable to impeachment through Verge's phone records, Verge's counsel *correctly* determined the phone records were *not admissible* under the business-records statute and reasonably believed they would not be an issue at trial; his evaluation of the strategy's viability is not unreasonable for failing to anticipate that the trial court would *erroneously admit* the phone records. The motion court did not clearly err in determining that Verge's counsel's pretrial decision to present the alibi defense was a reasonable strategy.

Verge also contends that, even if the pretrial decision to present the alibi defense was a reasonable strategy, his counsel was deficient in not abandoning it once the phone records were unexpectedly admitted during the State's case-in-chief. This argument is fueled by hindsight bias. At the time the phone records were erroneously admitted, Verge's counsel reasonably believed he would still have two viable witnesses—based on

9

his prior conversations with them and their past deposition performances—to counter the impeachment evidence and support the alibi defense; additionally, Verge's counsel had already promised the jury he would present an alibi defense in his opening statement, as noted by the motion court:

> [C]ounsel had raised the issue of an alibi during voir dire and opening statement. While [Verge] suggests his personal belief that they should have gone with a defense based solely on challenging the State's evidence, an alibi defense is not inconsistent with attacking the credibility of the State's case, and [Verge] has failed to demonstrate that, at the start of the trial, [counsel]'s strategy was unreasonable or incompetent. All of the evidence presented to this Court indicates that, when [Verge's counsel] first mentioned the alibi, he expected to have [Alibi Witness 2] as a potential witness and did not have any reason to expect that [Alibi Witness 1]'s testimony would be as poor as it ended up being. . . .
>
> Because the decision to present an alibi was reasonable at the time of opening statement, the issue then arises whether the events after the start of the trial required a change in strategy. There were two events that [Verge's counsel] had to consider: the failure of [Alibi Witness 2] to appear and the State's disclosure of potential impeachment evidence. Given this new information, [Verge's counsel] had to decide between having [Alibi Witness 1] testify (without knowing whether [Alibi Witness 2] would be found and would testify after [Alibi Witness 1]) and breaking the promise that the jury would hear alibi testimony. While reasonable counsel could have concluded that these developments warranted a change in strategy, reasonable counsel could also have concluded that the original strategy of presenting an alibi defense was still viable, and the fact that the opening statement had promised an alibi would have weighed in favor of having [Alibi Witness 1] testify.
>
> . . . .
>
> While [Verge's counsel] was aware of or should have been aware of some potential avenues for the State to impeach [Alibi Witness 1] prior to [Alibi Witness 1]'s testimony, Verge has not shown that competent counsel would have concluded that [Alibi Witness 1] would be such a bad witness that it was better to forego the alibi claim even though the defense had represented to the jury that there would be an alibi defense. While the evidence that the State had to impeach [Alibi Witness 1] undermined [Alibi Witness 1]'s

credibility, more damage was done to [Alibi Witness 1]'s credibility when he tried to evade acknowledging that evidence. Verge has not shown that [his counsel] should have anticipated those evasive or incredible responses. In short, based on what [Verge's counsel] knew at the time that he decided to have [Alibi Witness 1] testify, the decision to have [Alibi Witness 1] testify was within the scope of competent representation.

Fulfilling the evidentiary promises made during a party's opening statement is critical to establishing the credibility of a party's case; such promises should not be lightly abandoned:

> The most serious flaw in counsel's representation was his telling the jury in opening statement that he would produce [a particular witness] . . . and then failing to follow through by calling him to the stand. The prosecutor understandably leaped on the defense in closing argument for this omission, thereby impairing defense counsel's and his client's credibility in the eyes of the jury.

*Blankenship v. State*, 23 S.W.3d 848, 851 (Mo. App. E.D. 2000); *see also Midgyett v. State*, 392 S.W.3d 8, 13 (Mo. App. W.D. 2012) (explaining that failing to fulfill evidentiary promises made during an opening statement opens the door to "criticism of the effectiveness—or ineffectiveness—of [counsel's] representation of the defendant"). Thus, Verge's counsel had good reason to stick with the alibi defense promised in his opening statement, especially when he reasonably—although incorrectly—believed he would have two viable witness to support it. The mere fact that the alibi defense did not succeed because one witness refused to testify completely and the other witness performed unexpectedly poorly on the witness stand cannot render the strategy unreasonable. We agree with the motion court that continuing to pursue the alibi defense

11

was a reasonable trial strategy, so it is not susceptible to a claim of constitutionally deficient performance.[4]

The motion court did not clearly err in concluding that Verge's counsel was not deficient for presenting the alibi defense. Verge has not established any deficient performance by his trial counsel, so his ineffective assistance claim fails. Because Verge's claim fails under the performance prong, we need not and do not address the prejudice prong.[5]

Verge's point on appeal is denied.

## Conclusion

The motion court's judgment is affirmed.

_____
Mark D. Pfeiffer, Judge

Cynthia L. Martin, Presiding Judge, and Edward R. Ardini, Jr., Judge, concur.

---

[4] We do not hold that Verge's counsel was *required* to present the alibi defense in order to render effective assistance; instead, we agree with the motion court's conclusion that, under the particulars of this case, "the decision on whether to present an alibi defense was a strategic call on which reasonable attorneys could disagree and does not meet the level of ineffective assistance of counsel."

[5] That said, we agree with the motion court's conclusion that the evidence of Verge's guilt was overwhelming, providing an additional basis to conclude Verge suffered no prejudice from the presentation of the alibi defense.